ARKANSAS POWER & LIGHT COMPANY *v.* BEAUCHAMP.

Opinion delivered November 16, 1931.

*Robinson, House & Moses,* for appellant.

*H. B. Means* and *John L. McClellan,* for appellee.

BUTLER, J. The appellant, Arkansas Power & Light Company, built a water power dam, called the Remmel Dam, across the Ouachita River in Hot Spring County, about midway between the towns of Hot Springs and Malvern, by which a reservoir known as Lake Catherine was created covering an area of approximately 3,000 acres. Later, the appellant began the construction of another dam about twelve miles above the Remmel Dam, and at the upper head of Lake Catherine, the construction of which was nearing completion in the fall of 1930. The appellees owned and operated some small farms lying adjacent to the Ouachita River, about ten to fourteen miles below the Remmel Dam. On October 7, 1930, a part of these farms were overflowed, and the matured crops of corn then standing thereon were destroyed.

The appellees brought suit against the appellant company to recover damages for the destruction of the crops on the ground that the same was occasioned by the negligent operation of the flood gates of the Remmel Dam, by which a volume of water was suddenly released from the reservoir above into the stream below in such quantity as to cause the overflow and damage. The appellant company denied the allegations of negligence, and contended that the damage to appellees' crops was not the result of any negligent act on the part of its servants, but was occasioned by an unusually large quantity of rain which suddenly fell during October 5th, 6th and 7th, in the watershed of the Ouachita River above the lands of the appellees, and that the overflow was the result of the high flood stage of the river due to natural causes, and not in any manner to the operation of the dam.

At the trial of the issues a verdict was rendered in favor of the appellees. In presenting the case here on appeal it is conceded that the court's declarations of law were correct except as to instruction No. 4½ given at the request of the appellees, and the giving of that instruction is assigned as error.

The principal question raised and argued by the appellant, however, is the sufficiency of the evidence, the contention being that there was no competent evidence of a substantial nature to support the verdict.

The Remmel Dam was so constructed as to impound the waters of the Ouachita River and raise them to a certain height and then permit the ordinary flow of the river to pass on over the dam to the river below. The dam was constructed with 12 openings, each 27½ feet wide and 18 feet deep, called flood gates, which were closed by means of a door let down from above. These floodgates were for the purpose of letting the excess water through in times of flood and were supposed to be large enough to permit the maximum floods of the river to pass through. The doors or gates were so arranged that they might be raised to any desired height at the will of the person in charge of the dam. The testimony of the witnesses for the appellant tended to prove that the floodgates were properly operated at the time of the flood, and that no more water was allowed to pass than the existing natural flowage, and that the quantity of water passing and the resultant overflow of appellees' lands were occasioned solely by unusual and excessive rains. Indeed, there is evidence that the construction and operation of the dams as shown by the records on the occasion of the overflow, instead of causing the overflow, had the effect of lessening its extent as the dams impounded the water and controlled its flow so as to lessen the volume of water which would otherwise have covered the lands of the appellees. It would serve no useful purpose to detail this evidence, for, as we have seen, it is sufficient to have warranted a verdict for the appellant, if it had been accepted as true by the jury.

Since this testimony was not accepted by the jury, it becomes important to review such circumstances as appear in the evidence tending to contradict that testimony and to refute the contention made by the appellant. It is well settled that the verdict must not rest on

mere conjecture or speculation, but on some substantial testimony tending to establish the negligence alleged or proof of some other related facts from which the negligence might reasonably be inferred, but, where there is some substantial testimony, the verdict of the jury may not be set aside by this court, although it may appear against the preponderance of the evidence. It may be conceded that there is no direct evidence contradicting the testimony of the witnesses for the appellant regarding the operation of the floodgates of the Remmel Dam. Such contradiction, if any, must appear from proof of circumstances. The jury has found by its verdict that such circumstances existed, and that from these the reasonable inference arose that the appellant was negligent, and that this negligence was the proximate cause of the damage to the lands of the appellees.

The circumstances which the testimony tended to establish are as follows: Prior to October 5th there had been a severe and protracted drouth, and the water of the Ouachita River, with its affluents, was extremely low. In the vicinity of the Remmel Dam and in the territory drained by the Ouachita River above the same, a heavy rain began falling on the afternoon of October 5th, continuing without intermission through the 6th and until the morning of the 7th. The heaviest precipitation was between the midnights of the 5th and 6th, 4.03 inches, and from midnight of the 6th until about eight o'clock of the morning of the 7th, 3.49 inches. The employees at the Remmel Dam had means by which they could communicate with the weather bureau and thus obtain information of the rainfall and the volume of water likely to come down the river. There is no testimony that the employees of defendant company availed themselves of this means of information, although the assistant engineer of the Phoenix Utility Company (a corporation not connected with appellant company) in charge of the work at the Carpenter Dam on the morning of the 7th did call by telephone at hourly intervals and obtained information

relating to the rainfall and the rise of the river above the dam. At this time the waters had already begun to pile up against the Carpenter Dam and were rapidly rising. From seven o'clock on October 6th till seven o'clock on the morning of the 7th it rose 11½ feet and at noon of that day it had risen 31.7 feet above the stage shown at seven o'clock on the day previous. There was no evidence offered from which it could be known at what time the reservoir began to rise, but it was shown to have been rising from 1:00 o'clock A. M., on the 7th to 5:50 A. M. on that morning. At that hour the floodgates of the Remmel Dam were begun to be opened at intervals of about fifteen to twenty minutes apart so that at eight o'clock seven floodgates had been raised to a height of ten feet and one to a height of six feet. At 8:45 A. M. the gates began to be gradually closed, this operation continuing until 8:00 P. M. At about six o'clock on the morning of the 7th of October the river below the Remmel Dam and opposite the lands of the appellees was about 26 inches above low water mark. At eight o'clock it had risen to 12 feet, between nine and ten o'clock it was 16 feet, and at noon it had reached its highest point of about 19 feet. The water which came down the river that morning was as clear as spring water. Before this, from a low water stage, it had always taken from 24 to 36 hours for the water to rise sufficiently to flood the lands of the appellees. These circumstances warranted the inference that the water came from Lake Catherine, and that the floodgates had been opened negligently, thus precipitating within a few hours the water which before had flowed more slowly down stream. Had the appellant kept informed of the amount of water falling and the stage of the river, and gradually lowered the level of Lake Catherine, the reservoir might have held the floodwaters, but appellant neglected to take any precautions until the morning of the 7th and the jury were justified in the conclusion that the appellant then opened the floodgates more than was necessary and to such an extent that the flood resulted.

The appellant argues that the fact that the water was clear would have no probative force, but it is well known that water when confined in a lake become clear by reason of the sediment being deposited, and that when flood-waters, loaded with silt, are poured into such a reservoir they push the clear water before them, and this clear water will first flow out. This is evidently what happened in this case.

Instruction No. 4½ is as follows: "The court instructs the jury that while negligence cannot be inferred merely from the happening of the injury, but the court instructs you that negligence may be inferred from the facts shown and detailed in the testimony introduced in the case."

The appellant specifically objected to the giving of this instruction, and now insists that it erroneously applied the doctrine of *res ipsa loquitur* when such doctrine was not involved, and, further, that it amounted in effect to a peremptory instruction for the plaintiff because its language amounted to a judicial interpretation that there were sufficient facts already introduced in the case from which negligence would be inferred, and that the only prerogative of the jury would be to determine the amount of the damage.

Such interpretation is not justified by a fair analysis of the language used in the instruction. Nowhere are any words used which in their ordinary meaning can be construed to mean that the proof of the happening of the injury made out a *prima facie* case of negligence. This is the doctrine of *res ipsa loquitur*. The language used could not have been so construed by the jury, especially when in every instruction given the burden of proof is cast upon the plaintiff and more especially so by instruction No. 6½ given at the instance of the defendant, in which it is emphasized that the plaintiffs are "required by law to establish all of the material allegations of their complaint on which they claim damages by a preponderance of the evidence before they can recover," and

"* * * if the evidence is evenly balanced so that the jury are in doubt and unable to say on which side is the preponderance * * * then * * * your verdict should be for the defendant." It is elementary law that any fact at issue may be proved by circumstantial evidence, and this, we think, is all that the instruction complained of, as reasonably interpreted, undertook to say.

Finding no error, the judgment is affirmed.